# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**BELINDA CRONIN,**

          **Plaintiff,**

v.                                                         Case No. 04-C-999

**KENOSHA UNIFIED SCHOOL DISTRICT,**
**JOHN BELCHER, POLLY MUNN,**
**GILBERT OSTMAN, and ERIC OLSON,**

          **Defendants.**

# DECISION AND ORDER

This action involves allegations of race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, and 42 U.S.C. §§ 1981, 1983, and 1985. The plaintiff, Belinda Cronin, filed her complaint against the Kenosha Unified School District ("KUSD"), John Belcher, Polly Munn, Gilbert Ostman, and Eric Olson (collectively the "Defendants"). The Defendants filed a motion for summary judgment, which is now pending before the Court.[1]

## BACKGROUND

Cronin, who is an African American, began teaching for the KUSD during the 1984-85 school year. In 1990, she was appointed Assistant Principal at Bullen Junior High School ("Bullen"). In May 1995, Ronald Soulek, who was the principal at Bullen, reprimanded Cronin in writing because she would leave work without his permission. That prompted

---

[1] The Defendants' reply brief was 24 pages in length, but Civil Local Rule 7.1(f) limits reply briefs to 15 pages. Accordingly, the Court did not consider anything in the Defendants' reply brief after page 15.

Cronin to call Soulek "a lying, sneaky son-of-a-bitch" to his face. Cronin received a pay decrease due to her response to Soulek, and was transferred to Lincoln Junior High School ("Lincoln") to serve as Assistant Principal there.

In July 1995, shortly after arriving at Lincoln, Cronin shared a disciplinary letter addressed to one of her staff members with some parents. The Superintendent of Schools, Dr. Anthony Biscigilia, issued a letter of reprimand to Cronin because he previously counseled Cronin that it was inappropriate to share disciplinary letters issued to the staff with outsiders.

In September 1997, Cronin was appointed Principal at Bain Elementary School ("Bain"). In February 1999, Cronin was placed on probation, or what KUSD called the Professional Improvement Plan ("PIP"). Cronin was placed on PIP for three reasons. First, she was accused of frequently being absent from work without explanation or permission. Second, she failed to complete performance evaluations of at least nine teachers, which she was required to do as Principal. Third, she apparently did not respond to her supervisor's requests to set up meetings regarding her performance.

In October 1999, she was removed from PIP, and shortly thereafter, the KUSD Board of Education (the "Board") renewed Cronin's employment contract for the period from July 1, 1999 to June 30, 2001. However, during the 1999-2000 school year, questions about Cronin's performance continued. The Superintendent at that time, Dr. Michael Johnson, told Cronin that he continued to receive complaints that Cronin was often absent at Bain, and directed her to be present everyday at the start of school. Furthermore, Cronin again failed

2

to complete all of her teacher evaluations. Accordingly, she was directed to attend a performance evaluation meeting on June 16, 2000.

Cronin did not attend the performance evaluation meeting. She said she was not prepared, and instead sent an e-mail to Karen Davis, her supervisor, accusing her of conducting " . . . your nice nasty offers of assistance with a smile, [but] the ending posture is often one of a tarantula." She copied the e-mail to Jason Olson, the Director of Personnel, and Yolanda Hughes, the Coordinator of Human Resources.

In August 2000, Cronin was officially placed on PIP again. In support of that decision, the Board cited several deficiencies on Cronin's part. First, Davis received numerous complaints from parents that Cronin was not available to discuss their concerns and would not return their phone calls. Second, Cronin continued to miss district meetings and failed to notify her supervisors regarding her absences. Third, she continued to be delinquent in completing teacher evaluations.

Pursuant to Cronin's request, she was assigned a new supervisor, Carol McMahon. In June 2001, McMahon reported in her evaluation that Cronin had performed satisfactorily. Cronin was taken off of PIP at that time, and was given a two year contract extension.

On July 17, 2001, Cronin asked McMahon if she could take vacation time during the weeks of August 6-10 and August 13-17, 2001. McMahon granted her request for the first week, but denied her request for the week of August 13-17. McMahon cited the district's policy that principals must be present two weeks prior to the school year and also said that there were significant administrative duties that needed to be completed at that time. Cronin

3

appealed McMahon's decision to the new Superintendent, Dr. Joseph Hentges. Hentges denied Cronin's request. Cronin left for vacation anyway during the week of August 13-17, 2001, missing a workshop that all principals were required to attend. After a pre-disciplinary conference, Hentges docked Cronin's pay for five days and notified Cronin that any future unauthorized absences would result in suspension or termination. Also, Hentges appointed Blain McCann, the Executive Director of K-8 Instruction, to be Cronin's new direct supervisor.

On February 14, 2002, Cronin, McCann, and McMahon attended a midyear performance conference to discuss Cronin's updated Action Plan, School Improvement Plan, budget and progress on teacher evaluations. Cronin stated that she did not have the folder containing these items and that the Action Plan and School Improvement Plan were not yet completed. McCann then told Cronin about a number of complaints he had received from parents regarding her performance as Principal, and he also advised Cronin that she could not leave the building and take vacation without his permission.

On April 10, 2002, a follow-up meeting occurred to address Cronin's performance. She received an evaluation in which it was found that Cronin was in need of improvement in four of the five general performance domains, specifically Leadership, Culture of Continuous Improvement and Learning, School Management, and Action Plan. Also, McCann announced that a Culture Survey would be conducted in which all of the teachers and staff at Bain would have an opportunity to participate.

4

On May 9, 2002, another meeting was conducted, at which McCann gave Cronin the results of the Culture Survey. The Culture Survey indicated that there was dissension and poor morale amongst the teachers and staff. Cronin received a 2.96 and a 2.85 out of 5 in Collaborative Leadership and Teacher Collaboration respectively, which McCann found unsatisfactory.

Also, in May 2002, Megan Holimon and Pamela Stevens, both mothers of Bain students and members of the PTA, sent McCann letters complaining about Cronin's conduct as Principal. They complained that Cronin would often treat parent volunteers disrespectfully, and that many volunteers would not continue as long as the current administration was in place.

On May 20, 2002, McCann recommended to Hentges that Cronin be reassigned to another position within KUSD. Hentges agreed with McCann's suggestion, but before he could place his recommendation before the Board, Hentges resigned. Daniel Tenuta, who was Cronin's supervisor at Lincoln, was appointed Interim Superintendent. Tenuta informed Cronin that he would not transfer her to another location.

On June 26, 2002, at 6:49 p.m., Cronin e-mailed McMahon stating that she would be taking off on June 27 and June 28, 2002, and also taking vacation on July 1-5, 2002. Cronin did not receive prior approval to be absent on those days. Citing Cronin's previous disciplinary action for taking vacation days without permission, Tenuta prohibited Cronin from taking any vacation days during the 2002-2003 school year. Nevertheless, on August 21, 2002, she took another unauthorized vacation day.

On July 9, 2002, Cronin was placed on PIP for a third time. That decision was based on her receiving another evaluation indicating that her performance was unsatisfactory. Beginning in September 2002, Cronin was directed to attend monthly monitoring conferences. McCann also told Cronin in a memo that "[f]ailure to attend these meetings without my prior written approval will be considered insubordination."

Cronin's performance problems continued during the 2002-2003 school year. Concerns about her continued failure to timely complete teacher evaluations and her handling of a theft of school money were raised by McCann and McMahon at the monthly monitoring conferences. On November 27, 2002, Cronin failed to appear to a previously scheduled monitoring conference without first contacting McMahon, McCann, or Tenuta. She later informed them that she had a doctor's appointment and would provide a doctor's excuse.

On January 16, 2003, McCann and McMahon gave Cronin the PIP Assessment and Recommendation Form, which indicated that she did not meet district expectations and that they would recommend that her contract not be renewed for the 2003-2004 school year. The PIP Assessment identified thirty-three specific areas of concern. The next day, on January 17, 2003, Cronin was transferred to the Department of Instruction, where she received the same compensation and benefits that she received as Principal at Bain. Cronin's replacement as Principal at Bain was Margaret Carpenter, who is an African American female.

On her first day at the Department of Instruction, January 17, 2003, Cronin tripped and fell on the stairs. Her injury prevented her from returning to work during the balance of the 2002-2003 school year. KUSD paid her in full through April 2003.

6

On January 29, 2003, Cronin received a letter from the Board that indicated that the Board was considering not renewing her contract when it expired on June 30, 2003. The letter was personally delivered to Cronin's home by Jean Cole, an assistant to the Human Resources Director. Cronin told Cole that Blane McCann was "full of crap" and that his initials stood for "bowel movement." She also called Jason Olson, the Human Resources Director, a "fat ass" and referred to Olson's wife as a "whore."

A non-renewal hearing was held in February 2003 by the Board at Cronin's request. Cronin testified and was represented by counsel. McCann, McMahon, and Tenuta also testified. They presented thirty-two exhibits, which included all of Cronin's performance evaluations, numerical performance ratings and performance improvement plans during her time as Principal at Bain, the non-renewal recommendation documentation as well as documents reflecting the disciplinary actions taken against Cronin.

On February 27, 2003, the Board voted 4-3 to not renew Cronin's contract. Polly Munn, Gilbert Ostman, John Belcher, and Eric Olson were Board members who voted in favor of the recommendation. Munn claimed she voted not to renew Cronin's contract because Cronin was placed on PIP three times and left on vacation without authorization on numerous occasions. Ostman gave similar reasons for his vote, and said that she showed no signs of improvement despite being placed on PIP three times. Belcher said he voted to not renew Cronin's contract because of her lack of responsiveness to supervision, problems in her dealings with parents, her refusal to follow KUSD policies and directions from her supervisors, and being absent without authorization. Olson also cited these same reasons in

7

support of his vote. On February 27, 2003, the Board notified Cronin in writing of its decision.

During Cronin's time working for KUSD, she filed numerous discrimination complaints against either KUSD, the Board, or the Kenosha Education Association ("KEA"), which is the teacher's union. Specifically, she filed at least ten such complaints, beginning on December 4, 1995.

**STANDARD OF REVIEW**

A court will grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A "material fact" is one which, under the relevant substantive law, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact exists if a reasonable juror could find that the evidence supports a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. When considering the movant's case, the Court should take all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hall v. Bennett*, 379 F.3d 462, 465 (7th Cir. 2004). If the movant meets his burden (by showing an absence of a genuine issue of material fact), the nonmovant may not rest on the pleadings.

8

Instead, the nonmovant must come forward with evidence that there is a genuine issue for trial that would support a reasonable jury verdict on every issue for which he bears the burden of proof at trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *Celotex Corp.*, 477 U.S. at 322-24. If the nonmoving party bears the burden of proof on a matter at trial, and he is unable "to establish the existence of an element essential to [his] case," summary judgment is appropriate. *Celotex*, 477 U.S. at 322-23.

### DISCUSSION

I.  Discrimination Claims

Cronin alleges that Munn, Olson, Belcher, and Ostman are liable for race discrimination, in violation of 42 U.S.C. §§ 1981 and 1983, by voting to not renew her employment contract. She also claims that KUSD discriminated against her on the basis of her race in violation of § 1981 and Title VII of the Civil Rights Act of 1964.[2]

Cronin attempts to prove discrimination using both the direct and indirect methods of proof. Under the direct method, she must show either "an acknowledgment of discriminatory intent by the defendant or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001). Cronin fails to make such a showing. She cites the testimony of Yolanda Adams, a member of the Board, who stated that Ostman made "derogatory" remarks about the number

---

[2] Cronin's complaint also included an allegation of a violation of 42 U.S.C. § 1985. However, Cronin did not defend that claim in her response brief to the Defendants' motion for summary judgment. Because Cronin abandoned her § 1985 claim, the Court will dismiss it.

9

Case 2:04-cv-00999-RTR    Filed 02/23/07    Page 9 of 14    Document 72

of complaints Cronin filed. But Adams did not say what exactly Ostman said, other than that his statements were "derogatory." Also, Ostman allegedly said that Cronin would not have filed so many complaints if she just did her job. In addition, Belcher reportedly was angry when he was named as a respondent to one of her complaints, and Munn allegedly joked with other Board members about the frequency with which Cronin filed discrimination complaints.

Such conduct does not evince a discriminatory intent on the part of the Board members. None of those statements provide any indication whatsoever that the Board members were motivated by racial prejudice or discriminated against Cronin because of her race. Accordingly, Cronin cannot make a showing of racial discrimination pursuant to the direct method of proof.

Alternatively, Cronin may make a showing of racial discrimination via the indirect, burden-shifting method of proof established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). Under this method, a plaintiff must first establish a *prima facie* case by demonstrating that she: (1) belongs to a protected class; (2) performed her job to the employer's legitimate expectations; (3) suffered an adverse employment action; and (4) received less favorable treatment than similarly-situated employees outside the protected class. *See Hildebrandt v. Ill. Dep't of Nat'l Res.*, 347 F.3d 1014, 1030 (7th Cir. 2003). There is no dispute that Cronin satisfies the first and third elements. However, she fails to show that she satisfied her employer's legitimate expectations, nor does she posit evidence that a similarly-situated employee outside the protected class was treated more favorably.

Cronin was placed on probation, or PIP as KUSD calls it, on three different occasions. The first time she was placed on PIP was in February 1999. Karen Davis and Alan Hoffman were her supervisors at that time, and they cited her excessive absences, her extensive periods away from school without notifying her supervisors, her lack of responsiveness to meeting requests by her supervisors, and her failure to timely complete performance assessments for her staff.

After she was taken off of PIP, the same problems persisted, so she was placed on her second PIP in August 2000. Cronin complained about her supervisor, Karen Davis, so she was given a new one, Carol McMahon. Nevertheless, McMahon eventually noticed the same problems that Davis noted, and placed Cronin on her third PIP in July 2002.

The problems cited by Cronin's supervisors are well documented. She frequently took vacation time without prior authorization. For instance, she was denied vacation time for August 13-17, 2001, because taking vacation two weeks prior to the start of school was against the district's policies. Nevertheless, Cronin took that week off anyway, which was a clear example of insubordination. She also oftentimes would not complete teacher and staff evaluations, despite her supervisors' numerous requests for her to do so. In fact, the evidence overwhelmingly demonstrates a pattern of significant and long-standing performance problems that spanned Cronin's entire tenure at KUSD.

Furthermore, in 1995, Cronin called her supervisor "a lying, sneaky son-of-a-bitch." Later, she told an employee at Human Resources that Blane McCann's initials stood for "bowel movement." She also called Jason Olson, the Human Resources Director, a "fat ass"

11

and referred to Olson's wife as a "whore." Such comments demonstrate that Cronin lacked respect for her supervisors that make the evidence of her insubordination all the more believable.

KUSD gave Cronin numerous opportunities to improve her behavior, but the pattern of her insubordination continued until the end of her tenure at KUSD. Accordingly, Cronin fails to satisfy the second element of her *prima facie* case because she did not meet her employer's legitimate expectations.

Furthermore, Cronin fails to show that a similarly situated person outside of her protected class was treated more favorably. Cronin cites three principals, who are white and who were also recommended for non-renewal. Unlike Cronin, though, they never had a non-renewal hearing and were appointed to different positions within KUSD. Yet, Cronin does not say whether these principals had a similar history of performance problems as she did. Merely asserting that others were recommended for non-renewal is not sufficient to show that they were similarly situated. Rather, Cronin has to establish that they at least "had job performance histories somewhat comparable to [Cronin's]." *Hull v. Stoughton Trailers, Inc.*, 445 F.3d 949, 952 (7th Cir. 2006). Cronin failed, therefore, to establish the fourth element of her *prima facie* case as well.

Because Cronin failed to establish her *prima facie* case, the Court must grant summary judgment in favor of the Defendants on Cronin's discrimination claims.

II.  Retaliation Claim

Cronin also alleges that KUSD is liable for retaliation in violation of Title VII of the Civil Rights Act of 1964. Title VII prohibits employers from punishing employees for complaining about discrimination. *Moser v. Indiana Dep't of Protections*, 406 F.3d 895, 903 (7th Cir. 2005). Like her retaliation claims, Cronin may prove a Title VII violation by either the direct or indirect methods of proof.

Cronin argues that the previously mentioned complaints by Board members about her frequent filing of discrimination complaints is enough to satisfy the direct method of proof. However, her argument is without merit. The direct method requires Cronin to show a causal connection between the adverse employment action and her statutory protected activity. *See Moser v. Indiana Dep't of Corrections*, 406 F.3d 895, 903 (7th Cir. 2005). Thus, for statements like the ones made by the Board members to constitute circumstantial evidence of that causal link, the statements must be made around the time of, and in reference to, to the adverse employment action. *See Bellaver v. Quanex Corporation*, 200 F.3d 485, 493 (7th Cir. 2000). The statements made by the Board members about Cronin's complaints, though, do not meet either of those requirements. Cronin does not indicate when the Board members made their statements, and none of those statements reference their decision to not renew her contract.

Cronin's attempt to prove retaliation pursuant to the indirect method is also unavailing. Under the indirect method, Cronin must establish a *prima facie* case of retaliation by showing that: (1) she engaged in a statutorily protected activity; (2) she met

13

the employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *See Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003). As previously stated, Cronin is unable to show that she met her employer's legitimate expectations or that she was treated less favorably than similarly situated employees. Her retaliation claim against KUSD, therefore, must also be dismissed.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

The Defendants' Motion for Summary Judgment (Docket No. 33) is **GRANTED**.

The clerk is directed to enter judgment and close this case accordingly.

Dated at Milwaukee, Wisconsin, this 22nd day of February, 2007.

        **BY THE COURT:**

        **s/Rudolph T. Randa**
        **HON. RUDOLPH T. RANDA**
        **Chief Judge**